UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA : <br> : <br> v. : <br> : <br> BRIAN BAILEY and, : <br> : <br> DAVID PAITSEL, : <br>                 Defendants. : | No. 19-CR-156 (CKK) |

### UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM

The Court has asked the Government to provide supplemental briefing on the loss amount attributable to the corrupt conduct of Defendant Brian Bailey and Defendant David Paitsel, including, "which bribes were associated with which transactions and how the information Defendant Bailey received from those bribes resulted in particular amounts of pecuniary gain." *See* October 10, 2023, Minute Order. As discussed below, the loss amount is accurately and appropriately calculated for both defendants at greater than $250,000.

**I.  Legal Standards**

Under the United States Sentencing Guidelines (U.S.S.G. or Guidelines), "loss need not be determined with precision," and the "court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2B1.1 cmt. n. 3. *Accord United States v. Gottfried*, 58 F.3d 648, 651 (D.C. Cir.1995). Here, the Guideline applicable to bribery is § 2C1.1. Consistent with U.S.S.G. § 2C1.1(b)(2), in a bribery case, "[i]f the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official…whichever is greatest, exceeded $6,500, increase by the number of levels from the table in § 2B1.1 … corresponding to that amount." In other

words, Courts calculate the loss attributable to bribery as either the amount of the bribe payments, or the value of the benefit received for the payment, whichever is greatest. *See, e.g., United States v. Bras*, 483 F.3d 103, 104–05 (D.C. Cir. 2007) (loss calculated as that attributable to the scheme, and not limited to the value of bribe payments).

## II. Factual Basis for the Loss Over $250,000

Given the fulsome record, there is information sufficient for the Court to conclude that the benefit that Defendant Bailey received from his bribes to Dorsey and Defendant Paitsel exceeded $250,000, and that this loss amount is properly attributable to both defendants. To the extent that Defendant Bailey, through his sentencing memorandum, attempts to explain away the direct, causal relationship between the bribes he paid, and the profit he made, such an explanation flies in the face of the facts established at trial and is contrary to the jury's unanimous verdict.

### a. Defendant Bailey's Ability to Exercise Tenants' Opportunity to Purchase Act (TOPA) Rights for a Profit Was a Direct Result of the Bribes He Paid.

According to the evidence presented at trial, and as set forth in the Government's sentencing memoranda, to successfully execute his scheme, Defendant Bailey wanted to identify tenants with TOPA rights and acquire as many of those rights as necessary to emerge as the only person positioned to match a sale offer before the TOPA rights expired. If Defendant Bailey succeeded in being the only person to match the sale offer—to be the only person exercising a right-of-first refusal when all the other TOPA rights expired—he could then find investors to purchase the property and negotiate an "assignment fee"—basically a "finder's fee"—for himself. In Bailey's own words:

> "Washington DC is unique to any other jurisdiction in the country in that every tenant that's renting a residence has "The 1st right of refusal" to purchase the property they live in. . . . Once I purchase the tenant rights, I affectively become the tenant and buyer simultaneously! I get the opportunity to purchase the house,

> match or re-negotiate the contract and then sell my rights to purchase the property to another investor without actually taking title to the property.
>
> One objective is to accept the contract and terms as they are or try to get the price on the contract slightly lower. The main objective to is to get the tenant to relocate!!!! Once the tenant relocates or and the property becomes vacant most investors will be willing to purchase the property for a premium (above the price on the contract itself). The difference between the contract price and the premium amount that an investor is willing to pay is the margin of profit that's left over."

Government Trial Exhibit 103C (Jan. 24, 2017, email to an associate).[1]

As discussed at length during trial and in prior submissions, Defendant Bailey began paying Dorsey $500 per month for the confidential names of tenants holding TOPA rights in February 2016. *See, e.g.*, Government Trial Exhibits 102B, 102C (I want to sit and speak with you regarding our arrangement…I'm paying you every month consistently with the exception of June because I've been in NJ…but you know that."). The evidence at trial, which was also consistent with Dorsey's plea allocution, showed that Defendant Bailey paid at least $7,000 in bribes to Dorsey by check, and an untold amount to Dorsey in cash. *See, e.g.*, Government's Trial Exhibit 1M (checks). The evidence at trial established that, as a direct result of these bribes, Defendant Bailey had early access to the identity of tenants holding TOPA rights.

The Government also presented the jury with proof that Defendant Bailey paid Defendant Paitsel to give him contact information of the tenants holding TOPA rights in violation of Defendant Paitsel's official duty. In sum, evidence showed that Defendant Bailey paid Defendant Paitsel over $10,000 in bribe payments (at least $4,100 in cash, and $6,500 by check). *See* Government's Trial Exhibits 1N and 1O. These bribes allowed Defendant Bailey to contact the

---

[1] The Government trial exhibits referenced herein are attached as Exhibit A.

TOPA rights holders directly, and before, any of his competitors could. 9/28/22 Trial Tr. at 67 (Ladd Test.) (If a tenant has assigned their TOPA rights the assignee holds the right of first refusal).

Time and time again, Defendant Bailey was able to use the information he paid Dorsey and Defendant Paitsel to get his "finder's fee." Indeed, Defendant Bailey bragged to another associate that he had cornered the market in TOPA transactions: "If it's a TOPA transaction anywhere in DC and I'm on it, there is a 99.9% chance that no one will be able to get it. #NoConcernsAtAll#They'rewastingtime#." Government's Trial Exhibit 108E. And cornered he had, through his years' long corrupt conduct by shortcutting other investors and bribing his way to first in line for a sale.

### b. Defendant Bailey Gets a $40,000 "Finder's Fee" for 224 T Street NE.

As described generally above, Bailey's scheme was to illicitly obtain TOPA information, use it to purchase TOPA rights from tenants. These rights would require landlords to enter into an advantageous purchase contract with him, and then he would "flip" the property by assigning the contract at a premium to an investor. At trial, the government presented instances illustrating how the scheme worked and how the corruption of Dorsey and Defendant Paitsel was essential to its success. One such example related to 224 T Street NE and the $40,000 that Bailey made on the deal.

On May 3, 2017, Defendant Bailey cut Dorsey a $500 check. *See* Government's Trial Exhibit 1B. Just over a week later, on May 11, Dorsey emailed Bailey sale offers for various District properties, including 224 T Street, NE. *See* Government's Trial Exhibit 105B; 9/28/22 Trial Tr. at 136 (Pair Test.). 224 T Street was a building with four apartments, which suffered a fire requiring the tenants, one of whom was Patrick Brown, to vacate and prompting the landlord to put the property up for sale. 9/29/22 Trial Tr. at 121-124 (Brown Test.) The file Dorsey emailed

Bailey indicated that a purchaser made a $550,000 purchase offer for which there were four tenants with a right-of-first refusal. *See* Government's Trial Exhibit 105B at 4. But the file did not contain contact information for the tenants, who had vacated the building due to the fire. So, Bailey turned to Paitsel the very next day:

> "Take a look at this file! This is the best one that I got in a long time. It's a vacant 4 unit building for 550k in NE. the building caught on fire. That's why it's vacant!
>
> David I need your help on this one. If I can get in touch with just one of the tenants and they sign it would be awesome. The file is attached…. The address is 224 T Street NE WDC 20002
> Numbers on these guys. I think building is worth 600k wholesale:
> [Patrick Brown]
> [P. and N. L.]
> [R.M.]
> [J.D.E.]"

Government's Trial Exhibit 105B at 1.

Within an hour of receiving Defendant Bailey's email, Defendant Paitsel searched for the tenants in his FBI-issued CLEAR account and emailed the Bailey results. *See* Government's Trial Exhibits 6C (Paitsel CLEAR searches), and 105C (Email between Bailey and Paitsel). That night, May 12, 2017, at 9:42 p.m.—less than an hour after Paitsel emailed him the information—Bailey called one of the tenants, Patrick Brown, and spoke with him for nine minutes. *See* Government's Trial Exhibit 5A. Before the end of the next day, May 12, Bailey had met with Brown and paid him $500 in return for Brown assigning Bailey his TOPA rights – this was a fraction of their value. *See* Government's Trial Exhibit 105D and 9/29/22 Trial Tr. at 121-124 (Brown Test.). That night—24 hours after he first enlisted Paitsel's help—Bailey informed Paitsel of the success, reiterated the promise to pay Paitsel if Bailey successfully bought and flipped the property, and asked Paitsel to do more research – including to get the contact information for "T.M.":

> "Dave….

5

> I got in touch with [P.B.].  If I get paid off of it I'm going to give u 5K.
> Do you have any other info for
> [T.M.]
> [Address]
> The number was disconnected…email address anything.  Would be good
> Thanks B"

See Government's Trial Exhibit 105C.

On May 22, 2017, one day before the TOPA rights expired, Bailey informed the District Office of Housing and Community Development (DHCD) that he had obtained Brown's TOPA right and wanted to purchase 224 T Street.  See Government's Trial Exhibit 105D at 5.  Because he had purchased Brown's *right* of first refusal, the seller was required to sell the property to him – there is nothing attenuated about this link.  Within two months, on June 19, an investor recruited by Defendant Bailey contracted to buy the property, for which Bailey obtained a $40,000 assignment fee—a finder's fee.  The sale closed on or about September 20.  *id.*

Defendant Bailey paid both Defendant Paitsel and Dorsey in connection with this transaction. On Thursday, October 5, 2017, Bailey emailed Paitsel, "David…I will have the money tomorrow from the smaller deal.  Do you want to meet this weekend so I can get it to you?"  Government's Trial Exhibit 105G.  The next day, October 6, Bailey's escrow agent wired him the $40,000 assignment fee from the 224 T Street transaction.  Government's Trial Exhibits 105H and 1P.  Then, Bailey wrote a $500 check to Dorsey, writing on the memo line, "just because," Government's Trial Exhibit 1F, and texted her, "Ok…imma pay u tomorrow."  Government's Trial Exhibit (ln. 746).

On October 7, a Saturday, Bailey texted Paitsel, "Are you still good for lunch today?" and withdrew $4,100 in cash, to pay him the money he had promised.  See Government's Trial Exhibit 3Es, 1O; and 9/30/22 Trial. Tr. at 50 (Waltz Test.) ("So to make the timeline match up here, on October 4, Bailey told Paitsel, I will have the money tomorrow. Then on October 5th, Bailey sent

6

the blank check. Then on October 6, Bailey received a wire for 40,000. And then this withdrawal happened on October 7.").

### c. Defendant Bailey Gets a $250,000 "Finder's Fee" for 3021 15th Street NW.

Similarly, Defendant Bailey made $250,000 on the sale of 3021 15th Street NW, thanks to Dorsey and Defendant Paitsel. As a direct result of obtaining T.M.'s TOPA rights, he was able to purchase the property – indeed, the seller had no choice but to sell it to him. *See* Trial Exhibit 106D. He identified T.M. as the tenant holding the TOPA rights thanks to Dorsey, who sent him the information on May 3, 2017. *See* Government's Trial Exhibit 106A at 65-66. He was able to buy the rights from T.M., using the contact information Defendant Paitsel provided, which he explicitly asked for. *See* Government's Trial Exhibits 106 C (I got in touch with Patrick Brown. If I get paid off of it I'm going to give you 5k. Do you have any other info for T.M.") and 106E ("I owe you 5k! I found T.M. of 3021 15th Street NW). And, his assignment fee was $250,000. *See* Government Trial Exhibit 106H at page 4 (Bailey, to title company, "Attached are the wiring instructions for the 3021 15th Street Hud 1…There should be a $250,000 assignment fee disbursement to me"). In other words, the direct benefit he received from the bribes he paid to Dorsey and Defendant Paitsel in connection with 3021 15th Street NW was the $250,000 finder's fee he earned from the sale of the property; he had the right to flip the property because the bribes he paid to Defendant Paitsel and Dorsey allowed him to cut the line and short circuit other investors.

In this way Defendant Bailey's corrupt conduct is distinguishable from that in *United States v. Ring*, 811 F. Supp. 2d 359 (D.D.C. 2011) and other cases cited by Defendant Bailey where Courts have found the relationship to between the bribe paid and benefit received to be something

less than direct.[2]  Here, as a result of the bribe payments, Bailey acquired the *right* to purchase property at a profit: there was a direct cause and effect.

### d. Consistent with U.S.S.G. §2C1.1 the Loss Amount Attributable to Both Defendants is $250,000.

Defendant Paitsel was convicted of conspiring with Defendant Bailey to commit bribery. For sentencing in a conspiracy case, the Court should take into account "all reasonably foreseeable acts and omissions" committed by others in furtherance of the conspiracy. *United States v. Cooper*, 949 F.3d 744, 752 (D.C. Cir. 2020).  Defendant Bailey's actions and financial gain was foreseeable to Defendant Paitsel. Here, Defendant Paitsel knew exactly why Bailey was asking him for the tenant contact information. Their communications make clear that Defendant Paitsel knew that it was so that Bailey could purchase the TOPA rights and obtain a finder's fee; indeed, Defendant Bailey explicitly told Defendant Paitsel this. *See* Government's Exhibit 106C ("I got in touch with Patrick Brown. If I get paid off of it I'm going to give u 5k.) and 106 E ("Hey Bro…I owe you 5k!!! I found T.M. of 3021 15th Street NW. He assigned his rights over to me.  I'm going to flip the contract to another investor who has already escrowed the money to purchase the property…"). Defendant Paitsel also had visibility on the seize and scope of the types of deals that Bailey worked on. *See* Government's Exhibit 105B at 1 (discussing the $550,000 value of 224 T Street).  For this reason, and consistent with the jury's conspiracy verdict, the loss attributable to Defendant Paitsel should be the same as that of Defendant Bailey.

---

[2] Defendant Bailey's other arguments on loss are red herrings.  The Guidelines contain no explicit requirement that the loss calculation under §2C1.1 (or §2B1.1) must be loss to the Government, nor is the Government asking the Court to apply the insider trading Guideline.  As the plain language of § 2C1.1(b)(2), makes clear, in a bribery case, the loss amount is appropriately calculated as the value of the benefit received, and here, because the bribes allowed Bailey to buy up TOPA rights of first refusal, his finder's fee for exercising that right was a direct benefit of the conduct.

### III. Conclusion

For years, Defendants Bailey and Paitsel made a quick buck at the expense of the public trust. They should now be held accountable for the consequences of their conduct with a sentence that accurately reflects the egregious nature of their behavior.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/Elizabeth Aloi*
Elizabeth Aloi
John W. Borchert
D.C. Bar. 1015864 (Aloi)
D.C. Bar. 472821 (Borchert)
Assistant United States Attorneys
601 D Street, N.W.,
Washington, D.C. 20530
(202) 695-0610 (Aloi)
(202) 252-7679
Elizabeth.Aloi@usdoj.gov
John.Borchert@usdoj.gov