**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>BRIAN BAILEY and DAVID PAITSEL,<br><br>Defendants. | Criminal No. 19-156 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(October 17, 2023)

At the conclusion of a jury trial, Defendant Brian Bailey was found guilty of two counts of bribery and two counts of conspiracy, and Co-Defendant David Paitsel was found guilty of one count of conspiracy and one count of bribery. *See* Verdict Form, ECF No. 244. Both defendants are scheduled for sentencing on October 18, 2023. The Probation Office has calculated Defendants' total offense levels each to be 32, with both having a criminal history of zero. This results in a range of 121-151 months for Defendant Bailey, with a Probation Office recommendation of 48 months because "the loss table at USSG § 2B1.1(b)(1) may over-represent the seriousness of the offense." Bailey PreSentence Report ("PSR"), ECF No. 277, ¶ 159. Defendant Paitsel's range is 60 months on one count and 121-151 months on the other (to run concurrently), with a Probation Office recommendation of 2 years on each count, to run concurrently. In Defendant Paitsel's case, the Probation Office identified two factors that "would warrant a variance" from the Guidelines range – Defendant Paitsel's decades of military service as well as the loss table possibly over-representing the seriousness of the offense. Paitsel PreSentence Report, ECF No. 279, ¶ 155.

1

For both Defendants, the Government moves for a sentence of at least 121 months. Defendant Bailey calculates his offense level as 22, thereby reducing his sentencing range to 41-51 months, and he requests a sentence of no more than a year and a day, with half of that time served in home detention. Defendant Paitsel calculates his offense level as 16, with an applicable Guideline range of 21-27 months, and he requests a sentence of probation.

In his [286] Sentencing Memorandum, Defendant Bailey contests in detail the calculation of the "loss amount for purposes of [Sentencing Guideline] §2C1.1," which affects his offense level.[1] Defendant Paitsel moved to adopt and join Co-Defendant Bailey's Sentencing Guideline Loss Amount Calculation, *see* Motion, ECF No. 287. Before the Court granted that motion, the Court permitted Defendant Paitsel an opportunity to "file a supplement on this issue [calculation of loss amount] by October 16, 2023[.]" *See* October 10, 2023 Minute Order. Defendant Paitsel did not file any supplement. As such, the Court granted Defendant Paitsel's Motion to Adopt Co-Defendant Bailey's Sentencing Guideline Loss Amount Calculation, to the extent that it applies to him. *See* October 16, 2023 Minute Order. Accordingly, the discussion herein relating to loss amount calculation applies to both Defendants. The remainder of the discussion is applicable only

---

[1]In connection with this Memorandum Opinion and Order, this Court has considered the following documents: (1) Bailey's Response to PSR ("Def. Bailey's Objections"), ECF No. 275-1; (2) Bailey Presentence Investigation Report ("Bailey PSR"), ECF No. 278; (3) Paitsel Presentence Investigation Report ("Paitsel PSR"), ECF No. 279; (4) United States' Memorandum in Aid of Sentencing for Mr. Bailey ("Govt. Sent. Mem. [Bailey]"), ECF No. 281; (5) United States' Memorandum in Aid of Sentencing for Mr. Paitsel ("Govt. Sent. Mem. [Paitsel]"), ECF No. 282; (6) Defendant Paitsel's Sentencing Memorandum ("Def. Paitsel's Mem."), ECF No. 285, and the exhibits attached thereto (7) Defendant Bailey's Sentencing Memorandum ("Def. Bailey's Mem."), ECF No. 286, and the exhibits attached thereto; (8) the United States' Response to October 10, 2023 Minute Order [requesting additional briefing from the Government] ("Govt. Resp."), ECF No. 293, and the exhibits attached thereto; and (9) the entire record in this case.

to Defendant Bailey, who contested multiple paragraphs of the Probation Office's PSR, some involving non-dispositive factual disputes (which are not being addressed herein) and some involving more substantive claims (which will be addressed herein). Before analyzing Defendant Bailey's claims, the Court will provide a brief background relevant to this case and to sentencing.

**I. Background**

The District of Columbia's Tenant Opportunity to Purchase Act ("TOPA") gives tenants an assignable right-of-first refusal to purchase their home if the landlord decides to sell it. Govt. Sentencing Mem. [Paitsel], ECF No 282, at 2; *see* Trial Transcript ("Tr.") 9/28/22 at 65-66 (Ladd Testimony).[2] The government agency responsible for enforcing TOPA is the Department of Housing and Community Development ("DHCD"). *Id.* at 2. Before closing on a sale, landlords must give tenants written notice of a sale offer and permit them a chance to match the offer, and file paperwork with DHCD. *Id.* at 2; Trial Tr. 9/28/22 at 67-68. After being served with a sale offer, tenants have 15 days to exercise their right-of-first refusal to try and purchase the property, or tenants can assign their TOPA rights to someone else, including another tenant or a third-party, such as a property developer. *Id.* at 2; Trial Tr. at 67. Accordingly, a property developer capable of identifying tenants with TOPA rights at the same time that sale offers are filed with DHCD would have a competitive advantage, and that is what happened here.

In this case, Dawne Dorsey ("Ms. Dorsey") was a Program Specialist at DHCD, whose responsibilities included handling TOPA information, although she was required to keep such information confidential and not to give out names of persons with TOPA rights. Govt. Sent. Mem. [Paitsel], ECF No. 282, at 3-4 (citations omitted). In February 2016, Defendant Bailey met Ms. Dorsey, and he offered her approximately $500 per month to give him copies of landlord-filed

---

[2] This background information is drawn mostly from the Government's various briefs.

3

sale offers for purposes of identifying tenants with TOPA rights. *Id.* at 4. This continued on and off for about two years, and the exchanges documented in text and email demonstrate that Defendant Bailey was the one dictating the terms of the arrangement. *Id.; see, e.g.,* Govt. Trial Ex. 102B, 102C [June 13, 2016 email] (where Defendant Bailey noted that even though he was paying Ms. Dorsey, she was not providing the files in a timely manner, and if she couldn't do so, he would rather not do it, and she responded that they had been short-staffed at work, and she would try to do a better job). Defendant Bailey ended up paying "at least $7,000 in bribes to Dorsey by check, and an untold amount to Dorsey in cash." Govt. Resp., ECF No. 293, at 3, *see* Govt. Trial Ex. 1M (checks). Ms. Dorsey's services were invaluable to Defendant Bailey, as she provide him with early access to the identity of the tenants holding TOPA rights.

Defendant Paitsel was an FBI special agent with access to law enforcement tools designed to track people down, including an investigative database called CLEAR, which contains addresses, phone numbers, email addresses and other personal information. Govt. Sent. Mem. [Bailey], ECF No. 281, at 7-8. Upon request by Defendant Bailey, Defendant Paitsel looked up contact and other sensitive information for tenants holding TOPA rights and shared that information with Defendant Bailey. *Id.* at 9. This permitted Defendant Bailey to contact TOPA rights holders directly and before Bailey's competitors could do so. Govt. Resp., ECF No. 293, at 4, *see* 9/28/22 Trial Transcript ("Tr.") at 67 (Ladd Testimony). At trial, the Government presented proof that Defendant Bailey "paid Defendant Paitsel to give him contact information of the tenants holding TOPA rights in violation of Defendant Paitsel's official duty," with Paitsel receiving over $10,000 in bribe payments (at least $4,100 in cash, and $6,500 by check). *Id.* at 3, *see* Govt. Trial Exs, 1N and 1O.

4

"[T]o successfully execute his scheme, Defendant Bailey [needed] to identify tenants with TOPA rights and acquire as many of those rights as necessary to emerge as the only person positioned to match a sale offer before the TOPA rights expired." Govt. Resp., ECF No. 293, at 2. In the event that he was successful in doing so – being "the only person exercising a right-of-first refusal when all the other TOPA rights expired – he could then find investors to purchase the property and negotiate an "assignment fee" – basically a "finder's fee" – for himself." *Id.*; *see* Govt. Trial Ex. 103C (Jan. 24, 2017 email from Bailey to an associate).

In the instant case, Defendant Bailey used information from Ms. Dorsey and Co-Defendant Paitsel to obtain his "finder's fee" in the amount of $40,000 for a property located at 224 T Street, NE and in the amount of $250,000 for a property at 3021 15th Street NW. *See* Govt. Resp., ECF No. 293, at 4-8 (with citations to the Trial Transcript and Government exhibits). The Court turns now to the calculation of the loss amount, which is the issue that affects both Defendants Bailey and Paitsel.

**II. Calculation of Loss Amount Applicable to Defendants Bailey and Paitsel**

Defendant Bailey argues that "the loss amount for purposes of § 2C1.1 is $17,600, not [the] $290,000" [the amount of finder's fees on two properties] loss amount proffered by the Government and adopted by the Probation Office. Def. Bailey's Mem., ECF No. 286, at 4. Defendant Bailey notes further that "[a]lthough Probation agreed with this loss calculation, it concluded that "the loss table at USSG § 2B1.1(b)(1) may over-represent the seriousness of the offense" and recommends a downward variance from the Guidelines range to 48 months." *Id.* (citing PSR ¶ 159).

Under the Sentencing Guidelines for an offense involving one or more bribes provides that:

[i]f the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others

5

acting with a public official or the loss to the government from the offense, whichever is greatest, exceeded $6,500, increase by the number of levels from the table in § 2B1.1. . . corresponding to that amount.

U.S.S.G. § 2C1.1(b)(2).

"The government bears the burden of establishing 'loss' [ ] by a preponderance of the evidence," *United States v. Leonzo*, 50 F.3d 1086, 1087-1088 (D.C. Cir. 1995), on both "production and persuasion." *Id.* at 1088; *see also United States v. Villa*, 589 Fed. App'x 532 (11th Cir. 2015) ("When a defendant challenges the loss amount provided in his [presentence report], the government bears the burden of establishing the loss by a preponderance of the evidence, and the district court must make factual findings sufficient to support the attributed amount.") The sentencing judge "need only make a reasonable estimate of the loss [amount]." *See* U.S.S.G. § 2B1.1 cmt. n. 3(C) (according "appropriate deference" to the court's loss determination because the sentencing judge is "in a unique position to assess the evidence and estimate the loss based upon that evidence."); *accord United States v. Gottfried*, 58 F.3d 648, 651 (D.C. Cir. 1995). The loss calculation is a factual finding the Court must make by a preponderance of the evidence, and such finding is subject to review for clear error. *United States v. Brockenborrugh*, 575 F.3d 726, 738 (D.C. Cir. 2009).

### A. The Value of the Benefit Received

As a preliminary matter, Defendant Bailey asserts that the "only theory [pursuant to Section 2C1.1 (b)(2)] on which the government could possibly be relying is that the $290,000 [in finder's fees] is the 'benefit received or to be received in return for the payment.'" Def. Bailey's Mem., ECF No. 286, at 7. The Government confirms that its calculation of the loss amount relies upon "the value the benefit received," and here, "because the bribes allowed Bailey to buy up TOPA

[Tenant's Opportunity to Purchase Act] rights of first refusal, his finder's fee for exercising that right was a direct benefit of the conduct." Govt. Response, ECF No. 293, at 8 n.2.

In its Response, the Government addresses also the issue of whether the loss amount is attributable to both Defendants. The Government begins by noting that in a sentencing pertaining to a conspiracy case, the Court should take into account "all reasonably foreseeable acts and omissions" committed by others to further the conspiracy. *United States v. Cooper*, 949 F.3d 744, 752 (D.C. Cir. 2020). In the instant case, Defendant Paitsel knew why Defendant Bailey was asking him for tenant contact information, and Bailey's actions and financial gain were foreseeable to Paitsel. This is illustrated by their communications regarding TOPA rights and finder's fees. *See* Govt. Ex. 106C ("I got in touch with Patrick Brown [a tenant]. If I get paid off of it I'm going to give u 5k") and 106E ("Hey Bro . . . I owe you 5k!!! I found T.M. of 301 15th Street NW. He assigned his rights over to me. I'm going to flip the contract to another investor who has already escrowed the money to purchase the property . . .") Defendant Paitsel was aware also of the size and scope of the deals in which Bailey was involved. *See* Govt. Ex. 105B at 1 (discussing the $555,000 value of 224 T Street). The Government concludes that "[f]or this reason, and consistent with the jury's conspiracy verdict, the loss attributable to Defendant Paitsel should be the same as that of Defendant Bailey." Govt. Resp., ECF No. 293, at 8.

In sum, the Government asserts, and this Court agrees, that there is "sufficient evidence in the record for the Court to conclude that the benefit that Defendant Bailey received from his bribes to [Dawne] Dorsey and Defendant Paitsel exceeded $250,000, and that this loss amount is properly attributable to both defendants." Govt. Resp., ECF No. 293, at 2.

### B. Defendant Bailey's Challenges to the Loss Calculation Amount

Defendant Bailey challenges the loss calculation however, on three proffered grounds: (1) the "benefit" under the Guidelines "must be a *government* benefit," Def. Bailey's Mem., ECF No. 286, at 7-8; (2) the Government "bears the burden to prove a causal link between Mr. Bailey's payments to Ms. Dorsey [and Defendant Paitsel] and the supposed "benefit" he received "in return for the payment[.]" Def. Bailey's Mem., ECF No. 286, at 8; and (3) the Government must prove that Defendant Bailey would not have obtained the profit from these two real estate deals without his payments to Ms. Dorsey and Defendant Paitsel. Def. Bailey's Mem., ECF No. 286, at 8-11 (relying on *United States v. Ring*, 811 F. Supp. 2d 359 (D.D.C. 2011) (where the government alleged that a lobbyist who provided tickets and other benefits to public officials received a benefit of over $14 million, resulting from the value in various government benefits, such as earmarks and increased government contract awards). The *Ring* court noted an insufficient showing of causation because the court had to take into account benefits that would have been received anyhow through defendant's lobbying efforts, and the court found that the government failed to meet its burden to prove a "reasonable estimate of the 'value received or to be received' in return for the bribes paid by defendant." *Id.* at 378. Accordingly, the court declined to increase the Guidelines calculation by any "value of the benefit" enhancement. *Id.*

The Court looks now at Defendant Bailey's proffered three "fatal problems for the [G]overnment's position on loss" and the Government's response thereto.

### 1. Need for a Government Benefit

As noted previously herein, the Government's calculation of the loss amount relies upon "the value the benefit received or to be received in return for the payment." § 2C1.1(b)(2). Defendant Bailey argues that the "benefit" under the Guideline must be a *government* benefit as

opposed to a benefit from a private real estate developer's payments to Mr. Bailey in return for TOPA rights. Def. Bailey Mem., ECF No. 286, at 7. The Government asserts that "[t]he Guidelines contain no explicit requirement that the loss calculation under § 2C1.1 (or § 2B1.1) must be a loss to the Government. Govt. Resp., ECF No. 293, at 8, n.2.[3] Defendant Bailey cites no support for this proposition other than citing two examples from § 2C1.1 App. Note 3, where the losses incurred were losses to the Government. Defendant's anecdotal reasoning fails insofar as the plain language of the Guidelines make clear that Government pecuniary gain is one type, but not the only type, of qualifying benefit. USSG 2C1.1(b0(2) ("the benefit received or to be received in return for payment"). Accordingly, Defendant's argument in this regard fails.

### 2. Causal Link between Benefit and Corrupt Payments

Defendant Bailey argues that "the 'benefit' must be 'received **in return for** the payment'" but here, the "payments" went to Ms. Dorsey and Defendant Paitsel, while the "benefits" were derived from "third-party non-governmental real estate developers." Def. Bailey's Mem., ECF No. 286, at 8 (emphasis added by Defendant). Defendant Bailey notes that he received funds after negotiating two "separate arm's-length deals that did not involve Ms. Dorsey or Mr. Paitsel at all: one deal with the tenant to buy the TOPA rights and one deal with another real estate developer to sell those rights." *Id.* Defendant Bailey relies on *Ring*, 811 F. Supp. 2d at 377, where the court in that case found an "attenuated, if not nonexistent, causal link between" the benefit and the corrupt payments.

The Government counters this argument succinctly by explaining that: '[a]s the plain language of § 2C1.1(b)(2) makes clear, in a bribery case, the loss amount is approximately

---

[3] The Government notes further that "nor is the Government asking the Court to apply the insider trading Guideline." Govt. Resp., ECF No. 293, at 8, n.2 (responding to an argument in Def. Bailey's Mem., ECF No. 286, at 11-12).

9

calculated as the value of the benefit received, and here, because the bribes allowed Bailey to buy up TOPA rights of first refusal, his finder's fee for exercising that right was a direct benefit of the conduct." Govt. Resp., ECF No. 293, at 8 n.2. The Government contends that the corrupt conduct in this case is distinguishable from conduct in *Ring* and other cases cited by Defendant "where Courts have found the relationship between the bribe paid and the benefit received to be something less than direct." Govt. Resp., ECF No. 293, at 7-8. "Here, as a result of the bribe payments, Bailey acquired the *right* to purchase property at a profit: there was a direct cause and effect." *Id.* at 8 (emphasis added by Government). This Court finds that while Defendant would like to segregate the various steps of the transaction to eliminate the causal connection, the reality is that Bailey obtained early access to persons with TOPA rights, and he was able to purchase and flip the properties because the bribes he paid to Ms. Dorsey and Defendant Paitsel "allowed him to cut the line and short circuit other investors." Govt. Resp., ECF No. 293, at 7. The Court finds that the causal connection is direct, and accordingly, Defendant's argument in this regard fails.

### 3. Could Defendant have obtained the properties without Dorsey and Paitsel

Defendant Bailey contends that the Government must prove that he would not have obtained the profit from these two real estate deals without his payments to Ms. Dorsey and Co-Defendant Paitsel. He alleges that he "already knew about the 224 T Street and the 3021 15th Street properties before Ms. Dorsey sent him the offers of sale" and furthermore, the TOPA statute "required building owners to post the offer of sale publicly at the properties and the posted notices included the tenant names." Def. Bailey's Mem., ECF No. 286, at 9-10. Moreover, information on the internet would allow him to find the owners' contact information. *Id.* at 10. Mr. Bailey concludes therefore that "the government has no evidence to counter the fact that the benefit to Mr. Bailey from buying and reselling the TOPA rights for these two particular properties

'would have been received in any event.'" *Id.* (quoting *Ring*). That conclusion by Defendant is without merit. The record evidence in this case demonstrates that Defendant Bailey was "shortcutting other investors and bribing his way to first in line for a sale," Govt. Resp., ECF No. 293, at 4, because of his connection with Ms. Dorsey and Co-Defendant Paitsel and the information they provided to him. Govt. Resp., ECF No. 293, at 4; *see* Ex. 108B (Defendant Bailey bragging to an associate that: "If it's a TOPA transaction anywhere in DC and I'm on it, there is a 99.9% chance that no one will be able to get it." #NoConernsAtAll#They'rewastingtime#.") The Government sets out the steps that Defendant Bailey took regarding the purchase of TOPA rights for the two properties at issue, steps that concluded in successful predatory negotiations that were far from "arm's length." The Government's explanation highlights the integral role played by the Ms. Dorsey and Co-Defendant Paitsel.

### a. 224 T Street NE

With regard to 224 T Street NE, shortly after providing Ms. Dorsey with a $500 check, Defendant Bailey received information from Ms. Dorsey regarding various District properties, including 224 T Street (a building with four apartments), and he obtained tenant contact information from Co-Defendant Paitsel within an hour after emailing Paitsel. Govt Resp., ECF No. 293, at 4-5; *see* Govt. Trial Ex. 105B at 1 (email), Ex. 6C (Paitsel CLEAR searches), and 105C (email between Bailey and Paitsel); *see also* Govt. Trial Ex. 5A, 105D, and Trial Tr. at 121-124. After talking to Mr. Brown (one of the tenants of 224 T Street NE) and then meeting with him and obtaining his TOPA rights (for a fraction of their value), Defendant Bailey contacted Co-Defendant Paitsel again. Govt. Resp., ECF No. 293, at 5. He promised Co-Defendant Paitsel payment if the property was bought and flipped, and he asked him to obtain additional contact information (for a person designated as "T.M."). *Id.* Approximately ten days later, "one day

before the TOPA rights expired, Bailey informed the District . . . that he had obtained [Mr.] Brown's TOPA rights and wanted to purchase 224 T. Street." *Id.* at 6, *see* Govt. Trial Ex. 105D at 5. "Because he had purchased Brown's *right* of first refusal, the seller was required to sell the property to him[.]" *Id.* (emphasis by Government). Bailey received eventually the $40,000 finder's fee relating to that property, and he paid both Ms. Dorsey and Co-Defendant Paitsel in connection with that transaction. *Id.* at 6-7 (citations to exhibits omitted).

### b. 3021 15th Street NW

A similar scheme was employed so that Defendant Bailey could obtain the TOPA rights to property at 3021 15th Street NW. As a direct result of obtaining such rights, Defendant Bailey was able to purchase the property. *See* Trial Exhibit 106D. Defendant Bailey identified T.M. as the tenant holding the TOPA rights after Dorsey sent him the information on May 3, 2017. Govt. Resp., ECF No. 293, at 7; *see* Govt. Trial Ex. 106A at 65-66. Defendant Bailey explicitly asked for contact information for T.M. from Co-Defendant Paitsel, and he used that contact information to locate T.M. *Id.* at 7; *see* Govt. Trial Exs. 106C (asking Paitsel for contact information on T.M.); 106E (noting that he found T.M. and that he "owe[s]" Paitsel 5k); 106G (again noting that when he got his money on 3021 15th Street NW, and he "owe[d]" Paitsel 5k on that). The Government asserts that "Defendant Bailey made $250,000 on the sale of 3021 15th Street NW," with assistance from Ms. Dorsey and Co-Defendant Paitsel. Govt. Resp., ECF No. 293, at 7.

The Court cannot agree with Defendant Bailey's argument that he would have and could have obtained these two properties through his own efforts, in light of the record in this case, including the exhibits and testimony introduced at trial, which demonstrate his reliance on Ms. Dorsey and Co-Defendant Paitsel to assist him. Accordingly, Defendant's argument on this issue

12

fails. The Court turns now to Defendant Bailey's objections to the PSR, which pertain solely to himself.

### III. Defendant Bailey's Objections to the PSR

Defendant Bailey contests: (1) paragraph 64 (whether the bribes at issue are "separate"); (2) paragraph 65 (application of a Specific Offense Characteristic regarding the profit obtained); (3) paragraph 66 (application of a Specific Offense Characteristic regarding a public official in a high-level decision-making or sensitive position); and (4) paragraph 68 (application of a Specific Offense Characteristic regarding recruitment, also discussed in paragraph 52).

#### A. Paragraph 64

In the Bailey PSR, ECF No. 277, at ¶ 64, the Probation Office indicates that the offense involved more than one bribe insofar as Defendant Bailey paid Co-Defendant Paitsel a bribe of $5,000 on October 7, 2017, and a bribe of $6,500 (for multiple properties) on January 12, 2018. Defendant Bailey paid bribes totaling $7,000 on 12 occasions (between April 18, 2017 and July 9, 2018) to Ms. Dorsey. *Id.* Because there is more than one bribe, two levels are added. USSG § 2C1.1(b)(1). Mr. Bailey objects on grounds that "[e]ven if the two payments to Mr. Paitsel are considered to be bribes, they are not "separate" for purposes of USSG §2C1.1(b)(1)," as they are part of the same supposed "scheme" and made around the same time. Def. Bailey's Objections, ECF No. 275-1, at 6.[4] Furthermore, Defendant Bailey characterizes the payments to Ms. Dorsey as "effectively installment payments, which are counted as one bribe." *Id.*

The record in this case supports that there was "more than one bribe" paid by Defendant Bailey to Co-Defendant Paitsel, related to the two separate property transactions. "[M]ultiple

---

[4] The Court references Defendant Bailey's Objections to the Bailey PSR, as noted in ECF No. 275-1. These objections are incorporated into the Bailey PSR in a more summary form.

13

...
...
...

payments meant to influence more than one action should not be merged together for purposes of § 2C1.1 merely because they share a single overall goal or are part of a larger conspiracy to enrich a particular defendant or enterprise." *United States v. Arshad*, 239 F.3d 276, 281 (3d Cir. 2001), *cert den.*, 533 U.S. 910 (2001). Furthermore, the multiple payments to Ms. Dorsey do not appear to have been installment payments of any agreed upon total amount, but rather separate payments – for access to TOPA information – that could have been terminated at any time. Multiple "payments [that] were part of a larger conspiracy" can be the basis for an enhancement under § 2C1.1(b)(1), as long as they "were not installment payments for a single action." *United States v. Kahlon*, 38 F.3d 467, 470 (9th Cir. 1994). Accordingly, the Court finds that a two-step increase pursuant to Section 2C1.1 (b)(1) is warranted.

### B. Paragraph 65

The Bailey PSR, ECF No. 277, at ¶ 65 focuses on the loss calculation which was analyzed in the prior section of this Memorandum Opinion and Order and need not be repeated. Defendant Bailey obtained profits of more than $250,000 but less than $550,000, and therefore, 12 levels are added. USSG §§ 2C1.1(b)(2) and 2B1.1(b)(1)(G).[5]

### C. Paragraph 66

The Bailey PSR, ECF No. 277, at ¶ 66 indicates that the offense "involved a public official in a high-level decision-making or sensitive position: specifically David Paitsel was an FBI Supervisory Special Agent who misused his access to the FBI CLEAR database to illegally

---

[5] In connection with his objection to Paragraph 65, Defendant Bailey notes that, in Paragraph 55 of the Bailey PSR, the Probation Office notes there is "no identifiable victim who suffered a monetary loss as a result of the criminal conduct." Def. Bailey's Objections, ECF No. 275-1, at 6. *But see* Govt. Sentencing Mem. [Bailey], ECF No. 281, at 11 (noting that Defendant Bailey "deprived the people of the District [of Columbia] of that right [to honest services of its public officials]; at 12-13 (noting that the victims include tenants who were paid "a pittance for their TOPA right" and tenants "for whom confidential information was disclosed").

conduct searches for defendant Bailey; therefore, four levels are added" pursuant to USSG § 2C1.1(b)(3). Defendant Bailey contests that either Ms. Dorsey or Mr. Paitsel meet the definition of a person with a "high-level decision making or sensitive position." Def. Bailey's Objections, ECF No. 275-1, at 6. Defendant Bailey references Application Note 4, which defines this as "a position characterized by a direct authority to make decisions for, or on behalf of a government department, agency, or other government entity, or by a substantial influence over the decision-making process." *Id.* Defendant Bailey proffers that Mr. Paitsel was "an FBI agent who had no supervisory or decision-making role in the government." *Id.* at 6-7; *compare* Paitsel PSR, ECF No. 279, ¶ 12 (detailing Paitsel's roles within the FBI). The Court notes that the examples provided in Application Note 4 (B) indicate that "a juror, a law enforcement officer, an election official, and any other similarly situated individual" would qualify as a public official who holds a sensitive position, and similarly, this Court finds that an FBI agent would qualify as a public official holding a sensitive position, and accordingly, a four-level adjustment is applicable.

### D. Paragraph 68

In Paragraph 68 of the Bailey PSR, ECF No. 277, the Probation Office notes that because "Mr. Bailey recruited both Ms. Dorsey and Mr. Paitsel into the schemes, planned and organized the offense, and claimed right to a larger share of the fruits of the crime," a two-level adjustment is warranted, pursuant to USSG § 3B1.1(c), for Defendant Bailey having a role as an "organizer, leader, manager, or supervisor."

Defendant Bailey contends that he did not recruit Ms. Dorsey; instead, she "offered to send him the Offer of Sale Notices after he explained how difficult it was for him to get downtown to obtain them." Bailey's Objection, ECF No. 275-1, at 6. This allegation by Defendant Bailey is inconsistent with email exchanges between the two (discussed earlier herein) where Defendant

Bailey scolded Ms. Dorsey for not getting him the information in a timely manner and reminded her that he was paying her, and she promised to do better. The thousands of messages sent between Defendant Bailey and Ms. Dorsey illustrated how Defendant treated Ms. Dorsey as his underling in this scheme. *United States v. Bailey*, Crim No. 19-156-1(CKK), 2022 WL 4379059, at *4 (D.D.C. Sept. 22, 2022)(collecting messages, including one in which Defendant Bailey criticized Ms. Dorsey after she sent TOPA filing later than he intended).

Regarding Co-Defendant Paitsel, Defendant Bailey characterizes him as a "business partner[] for several years" prior to the time of the two payments. *Id.* Whether Co-Defendant Paitsel was a "business partner" of Defendant Bailey has no bearing on the fact that the record in this case indicates that Defendant Bailey would request specific identifying information that required Co-Defendant Paitsel to breach the duties of his position and provide confidential information to Defendant Bailey in exchange for payment. Based on the correspondence between the parties, it is evident that Defendant Bailey was in charge of the operation, and he obtained a large share of the profits, while Co-Defendant Paitsel and Ms. Dorsey benefitted minimally. Accordingly, a two-level adjustment is warranted.

**IV. Conclusion**

For the reasons explained in detail herein, it is this 17th day of October 2023,

ORDERED that the Court applies a loss amount calculation of over $250,000 (but less than $550,000), attributable to both Defendants, which effectuates a twelve-level adjustment to both Defendants' offense levels, and it is further

ORDERED that the objections by Defendant Bailey to Paragraphs 64, 65, 66, and 68 of the Bailey PSR – which involve whether the bribes at issue are separable, the loss amount, whether Paitsel is a public official with a supervisory/decision-making role or sensitive position,

and recruitment of Dorsey and Paitsel – are overruled, with the effect that all level increases propounded by the Probation Office with regard to Defendant Bailey are applicable.

_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE